## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SAMANTHA STEWART**                          |
    4256 E. Capital St. NE          |
    Washington, D.C. 20019          |      Case No.
                           |
                           |
         **Plaintiff,**          |      **Complaint for**
                           |      **Violations of the**
    **v.**                          |      **DCHRA, FMLA, DCFMLA, and**
                           |      **ERISA**
                           |
**FJ PROPERTY PAYROLL, LLC**          |
    300 32nd St          |
    Suite 310          |
    Virginia Beach, VA 23451          |
                           |
**FRANKLIN GROUP**          |
**COMPANIES, LLC**          |
    300 32nd Street          |
    Suite 310          |
    Virginia Beach, VA, 23451          |
                           |
                           |
         **Defendants.**          |
                           |

Plaintiff **SAMANTHA STEWART** ("Plaintiff") through their attorneys, HKM Employment Attorneys, LLP, hereby alleges as follows:

1. Plaintiff brings this action against **FJ Property Payroll, LLC** and **Franklin Group Companies, LLC** (jointly "Defendants") for Defendants' violations of the D.C. Human Rights Act ("DCHRA"), Family and Medical Leave Act ("FMLA"), District of Columbia

Family and Medical Leave Act ("DCFMLA"), and Employee Retirement Income

Security Act ("ERISA").

2. This Court is a court of general jurisdiction and properly confers subject matter

jurisdiction over all Counts and claims alleged by Plaintiff against Defendants in this

action.

3. At all times relevant to this action, Defendants regularly, customarily, and substantially

engaged in ongoing business activities and operations within the District of Columbia,

Plaintiff is an adult domiciliary and resident of the District of Columbia, and a substantial

portion of the acts and omissions giving rise to this action occurred within the District of

Columbia. For this reason, personal jurisdiction, and venue for the adjudication of this

matter is proper in this Court.

4. At all times relevant, Defendants engaged in interstate commerce by operating as a for-

profit entity in the District of Columbia and beyond.

5. During the relevant period, Defendants employed thousands of employees.

6. During the relevant period, Defendants employed Plaintiff and fifty (50) or more

employees within the District of Columbia.

7. During the relevant period, Plaintiff performed full time employment duties (40 or more

hours per week, and exceeding 1,250 hours of service in each 12-month period of

employment) for the benefit of Defendants within the District of Columbia.

8. Count I of this Complaint seeks relief against Defendants arising from Defendants'

violations of Plaintiff's rights under the DCFMLA. An employee who believes his rights

under the DCFMLA have been violated may file a civil action against an employer within

one (1) year after the occurrence or discovery of the alleged violation. D.C. Code §§ 32-509(a) and 32-510; D.C. Mun. Regs. tit. 4, § 1610.3.

9. Count II of this Complaint seeks relief against Defendants arising from Defendants' violations of Plaintiff's rights under the FMLA. An employee who believes his rights under the FMLA have been violated may file a civil action against his employer within 2 years after the date of the last event constituting the alleged violation, or 3-years in the case of an FMLA violation perpetrated by the employer willfully, or with reckless disregard. 29 U.S.C. § 2617(c)(2).

10. Count III of this Complaint seeks relief against Defendants arising from Defendants' violations of Plaintiff's rights under the DCHRA to be protected against disability discrimination.

11. Count IV of this Complaint seeks relief against Defendants arising from Defendants' violations of Plaintiff's rights under the DCHRA to be protected against disability retaliation.

12. Count V of this Complaint seeks relief against Defendants arising from Defendants' violations of Plaintiff's rights under ERISA to be protected against retaliation for seeking and/or obtaining benefits.

**FACTS**

13. Plaintiff began working for Defendants on or about October 5, 2023.

14. On March 4, 2025 Plaintiff became severely ill at work.

15. On March 4, 2025, upon seeing Plaintiff suffer from a medical issue, one of Defendant's leasing specialist, Jakhala Williams, reached out to Plaintiff's direct supervisor and the district manager, Shuanique Clark.

16. On March 4, 2025, upon being told of Plaintiff's emergency medical issue, Shuanique Clark told Jakhala Williams to call 911 and ask for an ambulance for Plaintiff.

17. On March 4, 2025, an ambulance arrived to take Plaintiff a hospital that was part of or affiliated with Howard University.

18. On March 5, 2025, Plaintiff was released from Howard University Hospital and Plaintiff texted Shuanique Clark at 6:56 am and informed her that Plaintiff would not be able to go into work.

19. On March 6, 2025, Plaintiff went MedStar Hospital, where she was treated and later released that same day, subject to several follow up appointments, including, "urgent" GI appointment, rheumatology appointment, pulmonology appointment, breast cancer screening. Plaintiff was also told to present to the ER if symptoms get worse.

20. On March 6, 2025, Plaintiff texted Shuanique Clark at 2:37am and informed her that Plaintiff would not be able to go to work given the continued medical issues Plaintiff was dealing with.

21. On March 7, 2025, Plaintiff texted Shuanique Clark at 6:01am and informed her that Plaintiff would not be able to go to work given the continued medical issues Plaintiff was dealing with.

22. On March 13, 2025, Plaintiff sought and received medical care at Medstar.

23. On March 13, 2025, Plaintiff received a text message from Shuanique Clark at 1:38pm inquiring as to Plaintiff's health status.

24. On March 13, 2025, Plaintiff responded to Shuanique Clarks' health status inquiry at 9:31pm.

25. On March 14, 2025, Plaintiff texted Shuanique Clark about Plaintiff's time sheet, asking how to fill out the time sheet while Plaintiff was on leave.

26. On March 20, 2025, Plaintiff sought and received medical care at Medstar.

27. On March 21, 2025, Plaintiff received a text from Shuanique Clark asking how Plaintiff was feeling and instructing Plaintiff to reach out to HR to apply for FMLA.

28. On March 21, 2025, Plaintiff replied to Shuanique Clark and let her know Plaintiff had received a text message from the porter on the Property (Park Chester Apartments) where Plaintiff was the Property Manager.

29. On March 21, 2025, Plaintiff formally applied for FMLA and DCFMLA.

30. On March 24, 2025, Plaintiff sought and received medical care at Medstar Hospital.

31. On March 25, 2025, Plaintiff texted Shuanique Clark at 5:53pm and let her know that Plaintiff was back in the Medstar Hospital.

32. On March 25, 2025, Plaintiff had an X-Ray at the Medstar Hospital.

33. On March 26, 2025, Plaintiff was still hospitalized at Medstar Hospital.

34. On March 26, 2025, Plaintiff had a CAT scan at Medstar Hospital.

35. On March 26, 2025, Plaintiff had a gastroenterology procedure, an endoscopy, at Medstar hospital.

36. On March 27, 2025, Plaintiff was still hospitalized at Medstar Hospital.

37. On March 28, 2025, Plaintiff had surgery at Medstar Hospital.

38. On March 28, 2025, Plaintiff texted Shuanique Clark at 4:58am and informed her that Plaintiff was still in the hospital, to which Shuanique Clark promptly replied "ok."

39. On March 29, 2025, Plaintiff was release home from MedStar Hospital.

40. On March 30, 2025, Dispatch Health, an at-home urgent medical care provider, visited Plaintiff at her home to provide urgent medical care.

41. On April 2, 2025 Plaintiff sought and received medical care at MedStar Hospital.

42. On April 7, 2025 Plaintiff sought and received medical care at MedStar Hospital.

43. On April 7, 2025, Plaintiff received a text message from Shuanique Clark at 6:19am asking when Plaintiff was returning, to which Plaintiff promptly replied that Plaintiff was diagnosed with H. pylori, that the stomach lining tear can become infected with H. pylori, that she was waiting for the doctor to release her in order to go back to work, that she had elevated white blood cells in her labs, and that her lupus was exacerbated.

44. Plaintiff was on approved FMLA and DCFMLA leave when Plaintiff received text messages from Defendant, through Shaunique Clark, inquiring about when Plaintiff was returning.

45. Plaintiff suffered from serious medical conditions requiring hospitalization and ongoing treatment, which substantially limited Plaintiff's ability to work during the relevant period.

46. On April 10, 2025, Plaintiff received formal approval via email for FMLA and DCFMLA from Defendants' third party administrator, One Digital, via email which read, in part, "Your leave is now approved as outlined above, through April 29, 2025" and included the following chart detailing Plaintiff's approved status for both FMLA and DCFMLA, the dates March 24, 2025 through April 29, 2025, a projected time of 5.4 weeks:

**LEAVE DETERMINATION**

| Policy: | Status | Projected Time Used | Dates: |
|---|---|---|---|
| Family Medical Leave Act | Approved | 5.4 Weeks | 3/24/2025 - 4/29/2025 |
| District of Columbia Family and Medical Leave Act for Employee Health | Approved | 5.4 Weeks | 3/24/2025 - 4/29/2025 |

47. On April 10, 2025, Plaintiff also applied for short term disability ("STD") from Lincoln Financial, Defendants' STD third party administrator.

48. Defendants were notified of Plaintiff's application for STD by Lincoln Financial.

49. On April 18, 2025, Defendant, through Shuanique Clark, asked Plaintiff about checks related to work while Plaintiff was on FMLA/DCFMLA.

50. On April 25, 2025, Plaintiff received a text from Shuanique Clark asking her to come back to work eventually.

51. On April 29, 2025, Plaintiff sought and received medical care at Medstar.

52. On April 30, 2025, upon being released from the hospital, Plaintiff emailed Defendant's HR at 12:55am and Plaintiff received an immediate automated response from Defendants that they had received the email, that the email was being reviewed, and that the request # was 230428.

53. On April 30, 2025, Plaintiff emailed Defendants at fortchaplinparkcompmgr@fgcompanies.com a copy of a doctor's note from MedStar dated April 29, 2025.

54. Defendants knew that Plaintiff's FMLA/DCFMLA leave was for serious medical conditions.

55. At no point prior to termination did Defendants revoke, rescind, or condition Plaintiff's approved FMLA or DCFMLA leave.

56. Defendants knew that Plaintiff was hospitalized while on FMLA/DCFMLA leave.

57. On April 30, 2025, Plaintiff spoke with Jennifer Bohan from Lincoln Financial about receiving STD and subsequently received an email from Jennifer Bohan thanking Plaintiff for speaking with her.

58. Plaintiff's STD Claim number is 17173955.

59. Defendant, through Lincoln Financial, approved Plaintiff's application for STD subsequent to Plaintiff's application for STD.

60. Before Defendants terminated Plaintiff, Defendants were notified by Lincoln Financial that Plaintiff's application for STD was approved.

61. Before Defendants terminated Plaintiff, Defendants were notified by Lincoln Financial that Plaintiff's approved STD benefits had a "determination date" of May 5, 2025, a "benefits begin date" of March 19, 2025, a "potential max benefit end date" of June 3, 2025, a "return to work date (estimated)" of June 4, 2025, and a closed date of June 4, 2025.

62. At no point prior to termination did Defendants revoke, rescind, or condition Plaintiff's approved STD benefits.

63. On May 2, 2025, at 8:20AM Plaintiff received an email from Jennifer Bohan thanking Plaintiff again and asking for discharge paperwork or office visit notes.

64. On May 2, 2025, at 11:17AM, 11:40AM, and 11:45AM Plaintiff responded to Jennifer Bohan's 8:20AM email with the requested documentation.

65. On May 2, 2025, Plaintiff emailed Defendants at ctijerina@fgcompanies.com a copy of a doctor's note that Plaintiff had received.

66. Plaintiff and Jennifer Bohan continued corresponding on May 9, 2025 and May 13, 2025.

67. On May 9, 2025 at 6:08AM, Plaintiff emailed Defendants at both ctijerina@fgcompanies.com and hr@fgcompanies.com "Good morning, I have not yet been released from my doctor. I have a 9:40am appointment today and send in my release to work letter and return to work today if released to work to day. Thank you for your patience"

68. On May 9, 2025 at 10:29AM, Defendant, through Heather Wilkie, emailed Plaintiff: "Despite multiple attempts by both OneDigital, our third-party leave administrator, and myself to contact you regarding your return to work, we did not received any response or correspondence. This lack of communication has led us to believe that you may have abandoned your position. As noted in the below attempts from OneDigital and myself, it was imperative that you return our calls and emails immediately or we would need to move to termination of employment. Please be reminded that your leave was approved through April 30, however, if you required additional time, it was your responsibility to communicate that need to our team, which did not occur."

69. On May 9, 2025 at 12:29PM, Plaintiff emailed Defendants copies of doctors' notes.

70. On May 9, 2025 at 12:50PM, Defendants, through Liz Baker, emailed Plaintiff: Good afternoon, Samantha- Thank you for providing this information. However, as Heather mentioned in her previous email, it was your responsibility to communicate updates directly to OneDigital and/or Human Resources per our company policy. HR, along with OneDigital, made every effort to ensure you were informed by following up via phone

call in addition to our emails, to which we received no response. Your Regional Manager also attempted to contact you by phone and text, again with no response. Despite Franklin Group granting you an extension to provide the necessary documentation, there was still no communication from your end. As a result, and due to your failure to report to work on your approved return date, your employment was terminated in accordance with company policy. Thank you, Liz Baker Human Resource Specialist"

71. On May 9, 2025, Plaintiff first discovered that she was terminated by Defendants.

72. On May 27, 2025, Defendant, through Liz Baker, emailed Plaintiff the following: "Good afternoon, Ms. Stewart- As outlined in our previous correspondence, your employment with Franklin Group officially ended on May 2, 2025. This decision was made due to the lack of response after multiple outreach attempts by both Franklin Group HR and OneDigital."

73. Defendants never sent Plaintiff a termination letter or notice on May 2, 2025.

74. Defendants retroactively terminated Plaintiff.

75. Plaintiff is no longer employed by Defendants, having been terminated by Defendants.

76. An H. Pylori infection is a disability under the DCHRA.

77. A gastric ulcer is a disability under the DCHRA.

78. Lupus is a disability under the DCHRA.

79. Defendants contacted Plaintiff so frequently throughout Plaintiff's approved FMLA and DCFMLA leave that Defendant's actions interfered with Plaintiff's FMLA and DCFMLA leave.

80. Defendants' repeated communications during Plaintiff's approved FMLA and DCFMLA leave constituted a pressure campaign to interfere with Plaintiff's approved FMLA and DCFMLA leave.

81. Defendants ongoing check-ins and questions kept Plaintiff functionally engaged with Defendants even though Plaintiff was on approved FMLA and DCFMLA leave.

82. Defendants terminated Plaintiff because of her disability and in retaliation for her application for and use of medical and disability leave on account of her disability.

83. Defendants approved Plaintiff's FMLA, DCFMLA, and STD benefits and knew that Plaintiff was hospitalized and under continuing care, but when Plaintiff provided updated medical documentation requesting additional time — while still medically compromised — Defendants did not deny the request, did not seek clarification, and did not engage in any interactive process, and, instead, Defendants terminated Plaintiff while her approved leave and disability benefits were still in effect, later labeling the termination as "job abandonment," but the record shows this was not abandonment — this termination was Defendants' response to Plaintiff's medical issues and approved leave.

84. During Plaintiff's period of employment, Defendants were aware of the FMLA's recordkeeping requirements, as codified at 29 CFR § 825.500.

85. During Plaintiff's period of employment, Defendants were aware that the FMLA's recordkeeping requirements required Defendants to keep detailing the following: "[b]asic payroll and identifying employee data, including name, address, and occupation; rate or basis of pay and terms of compensation; daily and weekly hours worked per pay period; additions to or deductions from wages; and total compensation paid."

86. During Plaintiff's period of employment, Defendants were aware that the FMLA's recordkeeping requirements required Defendants to keep detailing the following: "[d]ates FMLA leave is taken by FMLA eligible employees (e.g., available from time records, requests for leave, etc., if so designated). Leave must be designated in records as FMLA leave; leave so designated may not include leave required under State law or an employer plan which is not also covered by FMLA."

87. During Plaintiff's period of employment, Defendants were aware that the FMLA's recordkeeping requirements required Defendants to keep records detailing the following: "-If FMLA leave is taken by eligible employees in increments of less than one full day, the hours of the leave."

88. During Plaintiff's period of employment, Defendants were aware that the FMLA's recordkeeping requirements required Defendants to keep records detailing the following: "Copies of employee notices of leave furnished to the employer under FMLA, if in writing, and copies of all written notices given to employees as required under FMLA and these regulations See § 825.300(b)-(c). Copies may be maintained in employee personnel files."

89. During Plaintiff's period of employment, Defendants were aware that the FMLA's recordkeeping requirements required Defendants to keep records detailing the following: "Any documents (including written and electronic records) describing employee benefits or employer policies and practices regarding the taking of paid and unpaid leaves."

90. During Plaintiff's period of employment, Defendants were aware of Defendants' obligation to keep all required FMLA records for at least 3 years.

91. During Plaintiff's period of employment, Defendants had operations in place to maintain required FMLA records.

92. During Plaintiff's period of employment, Defendants were aware that Defendants' FMLA records must be complete and available to the DOL on request.

93. During Plaintiff's period of employment, Defendants were aware that Defendants' FMLA records must be the records must be accessible for inspection, copying, or transcription by DOL representatives upon request.

94. During Plaintiff's period of employment, Defendants were aware that the FMLA's recordkeeping requirements required Defendants to keep records detailing the following: documents (written or electronic) describing employee benefits or employer policies/practices on paid or unpaid leave.

95. During Plaintiff's period of employment, Defendants was aware that the FMLA's recordkeeping requirements required Defendants to keep records detailing the following: "[r]ecords and documents relating to certifications, recertifications or medical histories of employees or employees' family members, created for purposes of FMLA, shall be maintained as confidential medical records in separate files/records from the usual personnel files. If the Genetic Information Nondiscrimination Act of 2008 (GINA) is applicable, records and documents created for purposes of FMLA containing family medical history or genetic information as defined in GINA shall be maintained in accordance with the confidentiality requirements of Title II of GINA (see 29 CFR 1635.9), which permit such information to be disclosed consistent with the requirements of FMLA. If the ADA, as amended, is also applicable, such records shall be maintained in conformance with ADA confidentiality requirements (see 29 CFR 1630.14(c)(1)),

except that: (1) Supervisors and managers may be informed regarding necessary restrictions on the work or duties of an employee and necessary accommodations; (2) First aid and safety personnel may be informed (when appropriate) if the employee's physical or medical condition might require emergency treatment; and (3) Government officials investigating compliance with FMLA (or other pertinent law) shall be provided relevant information upon request.

96. During Plaintiff's period of employment, Defendants were aware that the D.C. Code § 32–1331.12 required Defendants to keep certain employment records.

97. During Plaintiff's period of employment, Defendants were aware that the D.C. Code § 32–508 required Defendants to keep certain records.

98. During Plaintiff's period of employment, Defendants were aware that the D.C. Code § 32–508 required Defendants to keep records to comply with the following language: "(a) An employer shall develop, maintain, and make available to the Mayor records regarding the employer's activities related to this chapter that the Mayor may prescribe by rule. (b) To ensure compliance with the provisions of this chapter, the Mayor, consistent with constitutional guidelines, may: (1) Investigate and gather data regarding any wage, hour, condition, or practice of employment related to this chapter; and (2) Enter or inspect any place of employment or record required by this chapter. (c) For the purpose of any investigation provided for in this section, the Mayor may exercise the subpoena authority provided in § 1-301.21."

99. During Plaintiff's period of employment, Defendants were aware that ERISA required Defendants to keep certain records.

100.     During Plaintiff's period of employment, Defendants were aware that ERISA §

107 required plan administrators to retain records used to support required filings and

disclosures.

101.     During Plaintiff's period of employment, Defendants were the plan administrator

for Plaintiff's STD benefits plan.

102.     During Plaintiff's period of employment, Defendants were aware that ERISA §

209 requires plan sponsors to maintain benefit records sufficient to determine the benefits

due or which may become due to plan participants and beneficiaries.

103.     During Plaintiff's period of employment, Defendants kept a summary plan

description ("SPD") and summaries of material modifications ("SMMs") for the STD

plan sponsored one or both of them sponsored.

104.     During Plaintiff's period of employment, Defendants kept a record of any and all

employees who had applying for FMLA, DCFMLA, and/or STD.

105.     During Plaintiff's period of employment, Defendants regularly communicated

with Defendants' third party- administrators for FMLA, DCFMLA, and/or STD.

106.     Upon information and belief, Plaintiff was treated differently than other

employees who, similar to Plaintiff, had applied for FMLA, DCFMLA, and/or STD.

107.     Upon information and belief, Defendants did not terminate other employees who

were on approved FMLA, DCFMLA, or STD leave for failure to return to work while

such leave remained approved.

108.     Defendants maintained written policies governing FMLA, DCFMLA, STD, and

job abandonment.

109.     Defendants did not follow their own written policies with respect to Plaintiff.

110.     At no time prior to Plaintiff's termination did Defendants issue any written notice that Plaintiff's FMLA, DCFMLA, or STD leave was denied, revoked, expiring.

111.     At no time prior to Plaintiff's termination did Defendants issue any written notice that Plaintiff's FMLA, DCFMLA, or STD leave was conditioned on additional requirements.

112.     At no time prior to Plaintiff's termination did Defendants issue any verbal notice that Plaintiff's FMLA, DCFMLA, or STD leave was denied, revoked, or expiring.

113.     At no time prior to Plaintiff's termination did Defendants issue any verbal notice that Plaintiff's FMLA, DCFMLA, or STD leave was conditioned on additional requirements.

114.     Defendants never informed Plaintiff, orally or in writing, that failure to return to work on any specific date would result in termination.

115.     The stated reason of "job abandonment" was not communicated to Plaintiff until after the termination decision had already been made.

116.     The stated reason of "job abandonment" was not communicated to Plaintiff until after Plaintiff was terminated.

117.     At all relevant times, Defendants were responsible for receiving, reviewing, and acting upon employee leave requests, medical documentation, and communications from Defendants' third-party leave and disability administrators.

118.     Defendants, received, reviewed, and had actual knowledge of written confirmation from OneDigital approving Plaintiff's FMLA and DCFMLA leave.

119.     Defendants, received, reviewed, and had actual knowledge of written confirmation from Lincoln Financial approving Plaintiff's STD benefits.

120.     On or before May 2, 2025, Defendants received written notice from Lincoln Financial confirming approval of Plaintiff's STD benefits.

121.     During Plaintiff's period of employment, Defendants kept all the records that Defendants was required to keep.

122.     Defendants were required by law to maintain accurate records reflecting Plaintiff's leave status, leave-related communications, and leave-related information.

123.     To the extent Defendants deny the existence of such records or have failed to maintain such records, such denial or failure would be inconsistent with Defendants' obligations.

124.     Defendants' agents and employees, including Plaintiff's Regional Manager and Human Resources, discussed Plaintiff's approved FMLA, DCFMLA, and STD benefits internally prior to the decision to terminate Plaintiff's employment.

125.     During Plaintiff's period of employment, Defendants communicated with their third party administrator(s) about Plaintiff's FMLA, DCFMLA, and/or STD.

126.     During Plaintiff's period of employment, various individuals employed by Defendants communicated with each other about Plaintiff's FMLA, DCFMLA, and/or STD.

127.     Defendants decided to terminate Plaintiff after receiving confirmation of Plaintiff's approved FMLA, DCFMLA, and STD benefits and before the expiration of all of those benefits.

128.     Defendants' decision to terminate Plaintiff was made while Plaintiff remained hospitalized and under continuing medical care.

## COUNT I

## RETALIATION IN

## VIOLATION OF THE DCFMLA

129.     Plaintiff re-alleges and incorporates by reference each allegation in the foregoing

paragraphs.

130.     At all relevant times, Defendants were eligible employers under the DCFMLA

and Plaintiff was an eligible employee under the DCFMLA.

131.     At all relevant times, DCFMLA Section 32-503(a) expressly provided Plaintiff

the right to request and/or take unpaid medical leave "because of a serious health

condition" up to 16 workweeks during any 24-month period.

132.     At all times relevant, DCFMLA Section 32-503(a) expressly provided Plaintiff

the right to request and/or take unpaid medical leave "intermittently when medically

necessary."

133.     At all times relevant, DCFMLA Section 32-505(a) expressly required that "[a]ny

employee who takes family or medical leave under [the DCFMLA] shall not lose any

employment benefit or seniority accrued before the date on which the family or medical

leave commenced."

134.     At all times relevant, DCFMLA Section 32-505(d) expressly required that, "upon

return from family or medical leave taken pursuant to [the DCFMLA], the employee shall

be: (1) Restored by the employer to the position of employment held by the employee

when the family or medical leave commenced; or (2) Restored to a position of

employment equivalent to the position held by the employee when the family or medical

leave commenced that includes equivalent employment benefits, pay, seniority, and other terms and conditions of employment."

135.    At all times relevant, DCFMLA Section 32-507(a) set forth that "[i]t shall be unlawful for any person to interfere with, restrain, or deny [a request or taking of protected unpaid medical leave permitted under the DCFMLA]."

136.    At all times relevant, DCFMLA Section 32-507(b)(1) set forth that "[i]t shall be unlawful for an employer to discharge or discriminate in any manner against any person because the person: (1) Opposes any practice made unlawful by [the DCFMLA]."

137.    As described herein, Plaintiff exercised their rights under the DCFMLA by requesting and taking medical leave for the purpose of seeking treatment and recovering from serious health and/or medical complications.

138.    Plaintiff was approved for DCFMLA.

139.    Shortly after Plaintiff informed Defendants of Plaintiff's need to take medical leave and took said medical leave, Defendants terminated Plaintiff's employment.

140.    Defendants' decision and action to terminate Plaintiff's employment was motivated and caused by Defendants' retaliatory motive directly and proximately caused by Plaintiff's request for and/or taking medically necessary leave protected under the DCFMLA resulting from Plaintiff's serious health condition and/or disability and was willful and in bad faith.

141.    Defendants' decision and action to terminate Plaintiff's employment while Plaintiff was out on medically necessary leave within the DCFMLA 16-week protected leave period or shortly thereafter, was unlawful and constituted a prohibited act expressly forbidden under DCFMLA Section 32-507.

142.    As a result of Defendants terminating Plaintiff's employment and willfully and in bad faith perpetrating a prohibited act expressly forbidden by the DCFMLA, Plaintiff has suffered, and continues to suffer, lost back and future wages, and extreme mental anguish and emotional distress and has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

**COUNT II**

**RETALIATION IN**

**VIOLATION OF THE FMLA**

143.    Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

144.    At all relevant times, Defendants were eligible employers under the FMLA and Plaintiff was an eligible employee under the FMLA.

145.    At all times relevant, FMLA Section 2612(a)(1)(D) expressly entitled Plaintiff to "a total of 12 workweeks of leave during any 12-month period… (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

146.    At all times relevant, FMLA Section 2612(b)(1) expressly provided that Plaintiff was entitled to take protected medical leave under the FMLA "Intermittently or on a reduced leave schedule when medically necessary."

147.    At all times relevant, FMLA Section 2614(a)(1)-(2) expressly provided in the event Plaintiff takes medical leave protected by the FMLA (a) Defendants were required to (1)(a) "restore[] [Plaintiff] to [his] position of employment held [] when the leave commenced; or (1)(b) "restore[] [Plaintiff] to an equivalent position with equivalent

employment benefits, pay, and other terms and conditions of employment" … and (2) that Plaintiff's "taking of [FMLA medical leave] shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced."

148.    At all times relevant, FMLA Section 2615(a)(1)-(2) expressly provided that "(1) [i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise [Plaintiff's right to request and/or take medical leave under the FMLA] and "(2) [i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."

149.    As described herein, Plaintiff exercised their rights under the FMLA by requesting and taking medical leave for the purpose of seeking treatment and recovering from serious health and/or medical complications.

150.    Plaintiff was approved for FMLA.

151.    Shortly after Plaintiff informed Defendants of Plaintiff's need to take medical leave and took said medical leave, Defendants terminated Plaintiff's employment.

152.    Defendants' decision and action to terminate Plaintiff's employment was motivated and caused by Defendants' retaliatory motive directly and proximately caused by Plaintiff's request for and/or taking medically necessary leave protected under the FMLA resulting from Plaintiff's serious health condition and/or disability and was willful and in bad faith.

153.    Defendants' decision and action to terminate Plaintiff's employment while Plaintiff was out on medically necessary leave within the FMLA leave period or shortly

thereafter, was unlawful and constituted a prohibited act expressly forbidden under the FMLA.

154.     When Plaintiff indicated that she was ready to return to work, Defendants told Plaintiff that there was no longer a job for her, thereby terminated her employment.

155.     Defendants' decision and action to terminate Plaintiff's employment was motivated and caused by Defendants' retaliatory motive directly and proximately caused by Plaintiff's request for and/or taking medically necessary leave protected under the FMLA resulting from Plaintiff's serious health condition and/or disability and was willful and in bad faith.

156.     Defendants' decision and action to terminate Plaintiff's employment while Plaintiff was out on medically necessary leave within the FMLA 16-week protected leave period, was unlawful and constituted a prohibited act expressly forbidden under FMLA Section 32-507.

157.     As a result of Defendants' terminating Plaintiff's employment and willfully and in bad faith perpetrating a prohibited act expressly forbidden by the FMLA, Plaintiff has suffered, and continues to suffer, lost back and future wages and extreme mental anguish and emotional distress and has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

**COUNT III**

**DISABILITY DISCRIMINATION**

**IN VIOLATION OF THE DCHRA**

158.     Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

159.     The District of Columbia Human Rights Act prohibits discrimination on the basis of disability with respect to an employee's compensation, terms, conditions, and privileges of employment. D.C. Code § 2-1402.11(a)(1).

160.     At all times relevant herein, Plaintiff had a disability, as described herein.

161.     Plaintiff is a member of a protected class because of their disability.

162.     At all times relevant herein, Defendants were aware of Plaintiff's disability.

163.     Plaintiff was capable of performing the essential functions of her job with or without a reasonable accommodation.

164.     Defendants discriminated against Plaintiff, by affecting Plaintiff's employment status, job duties, workplace environment, job title, pay rate, and hours, because of Plaintiff's disability.

165.     Plaintiff is entitled to relief for said discrimination.

## COUNT IV

## DISABILITY RETALIATION

## IN VIOLATION OF THE DCHRA

166.     Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

167.     The District of Columbia Human Rights Act prohibits an employer from retaliating against an employee for engaging in a protected activity. D.C. Code § 2-1401.1 *et seq.*

168.    At all times relevant herein, Plaintiff had a disability, as described herein.

169.    Plaintiff is a member of a protected class because of their disability.

170.    At all times relevant herein, Defendants were aware of Plaintiff's disability.

171.    Plaintiff was capable of performing the essential functions of her job with or without a reasonable accommodation.

172.    Plaintiff engaged in protected activity, as described herein.

173.    Defendants retaliated against Plaintiff, by affecting their employment status, job duties, workplace environment, job title, pay rate, and hours, because of Plaintiff's disability.

174.    Plaintiff is entitled to relief for said retaliation.

## COUNT V

## RETALIATION

## IN VIOLATION OF ERISA

175.    Plaintiff re-alleges and incorporates by reference each allegation in the foregoing paragraphs.

176.    ERISA § 510 makes it unlawful for an employer to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which that person is entitled to under the provisions of an employee benefit plan.

177.    Plaintiff was entitled to STD benefits, having contributed to such benefits through payroll deductions.

178.    Upon information and belief, Defendant's STD benefit plan is an ERISA plan.

179.    Upon information and belief, Defendant's STD benefit is not a self-funded plan.

180.    Plaintiff applied for and was approved for STD benefits.

181.     At all times relevant herein, Defendants were aware of Plaintiff having applied

and having been approved for STD benefits.

182.     Defendants terminated Plaintiff mere days before Plaintiff could commence her

already-approved STD benefits.

183.     Said termination against Plaintiff, was done so in retaliation for Plaintiff having

sought and/or obtained STD benefits.

184.     Plaintiff is entitled to relief for said retaliation.

## JURY DEMAND

185.     Plaintiff respectfully requests a trial by jury on all facts and issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this Court to grant Plaintiff the relief

requested as follows:

(a) Enter a judgment for Plaintiff and against Defendants on all Counts;

(b) Award Plaintiff damages for Defendants' violations of the DCHRA, DCFMLA, FMLA, and

ERISA including economic damages (e.g., back pay and front pay, inclusive of not just wages,

but also benefits and any other job-related value earned), compensatory damages, liquidated

damages, and punitive damages in amounts to be determined at trial;

(c) Award Plaintiff pre- and post-judgment interest on such amounts;

(d) Award Plaintiff attorneys' fees and costs; and

(e) Such other relief that the Court or a jury deems proper and just.


Dated: February 12, 2026

Respectfully submitted,
/s/ Gian Fanelli
Gian Fanelli, Esq. (DC Bar # 1020178)
HKM Employment Attorneys LLP
1325 G Street NW, Suite 558, Washington, DC 20005
(202) 978-3272
gfanelli@hkm.com